PURCELL et al. v. METROPOLITAN CAS. INS. CO. OF NEW YORK.

No. 15439.

Court of Civil Appeals of Texas.
Fort Worth.

June 19, 1953.

Dawson, Jones, Parish & Fillmore, of Wichita Falls, for appellants.

Nelson, Montgomery, Robertson & Sellers, of Wichita Falls, for appellee.

MASSEY, Chief Justice.

From a summary judgment in behalf of a defendant insurance company denying plaintiffs the right of reformation to delete the name of one of them from a liability insurance policy naming both as insured, and further construing the policy to be one which prohibited one of the parties named from invoking the indemnity protection afforded by the policy as applied to damages resulting when the vehicle insured by the policy struck and damaged property of the other of such persons so named as insured, the plaintiffs appeal. Judgment affirmed.

Appellee urges in his brief that there is a defect of the appeal bond as it purports to support the appeal of T. E. Purcell, one of the appellants herein. T. E. Purcell is a minor, and in so far as the conduct of the suit below was concerned was there represented by "next friend". No person, as a "next friend" of such minor executed the appeal bond. T. E. Purcell executed it himself, along with sureties. The language of the bond leaves no doubt but that it was intended to support the appeal of the minor appellant, and the sureties pledged themselves as the law contemplates they should conditioned upon the prosecution of the appeal. Appellee contends his position on the point and motion is supported by the cases of Biggins v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App. 1908, 110 S.W. 561, affirmed in 102 Tex. 417, 118 S.W. 125; Lewis v. Texas & P. Ry. Co., 1907, 47 Tex.Civ.App. 425, 105 S.W. 334; and Reed v. Great American Indemnity Co., Tex.Civ.App., Eastland 1932, 47 S.W.2d 860. All three were cases where affidavits in lieu of bond were given or attempted to be given. Since the appeal

138

as to the minor is necessarily either by him or for him as a principal, and since it is now well settled that the bond does *not* have to officially bear a principal's signature if it does bear the signatures of the sureties, the bond filed is a valid bond supporting the appeal of the minor, T. E. Purcell. See 3–A Tex.Jur., p. 393, sec. 311.

The facts of the case are these. In the spring of 1951, an antecedent policy of liability insurance was in effect upon a truck owned by T. E. Purcell, naming as persons insured both such owner and his father P. E. M. Purcell, who is an appellant herein along with his son. This policy had been issued at the instance of the father, unbeknownst to the son. It was alleged that the said father at about that time, and antecedent to the date on which the policy was due to expire by its own terms, notified the local insurance agent for the company to delete his name from the policy as a named insured. The local agent stated that he would make such deletion. Subsequently, about June or July of the same year, 1951 (no such deletion ever having been effected by such agent), the policy expired. The agent, without direct orders from anyone, wrote a new policy (and being the contract at issue in this law suit) by which the same truck was insured, and with relation to which indemnity was prescribed to be afforded to insured persons named therein as T. E. Purcell and P. E. M. Purcell. This policy was delivered to T. E. Purcell, who was the owner of the truck. He accepted and paid for the same. Apparently it was never discovered that anyone's name appeared on the face of the policy as party insured other than the owner, T. E. Purcell, until sometime in November of 1951, when the truck in question, operated by an agent of T. E. Purcell, ran into and damaged some property of P. E. M. Purcell. Upon this occurring, it appears that father and son examined the insurance policy and found the "insureds" named thereon as indicated. The father made a claim for damages against the son, and the son notified the insurance company. The insurance company appears to have notified both the son and his father that

the policy contract was not one which afforded indemnity protection of any kind to the son as related to the claim of the father. The insurance company denied present and future liability to both parties, upon the policy exclusion reading as follows: "This policy does not apply: * * * (f) under coverage B (property damage liability to limit of $10,000.00 as to each accident), to injury to or destruction of property owned by, rented to, in charge of or transported by the insured."

It is noted that by the insuring agreement of the policy in question the term "Insured" was defined as: "With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

■ The suit was filed by and in behalf of both named insureds, the father and son, and one theory under which they advanced the proposition that Exclusion (f) should be construed to have no application affording the appellee a right to deny liability under the policy,—was that since one Joseph Smith, agent of T. E. Purcell, was driving the vehicle at time of the collision, he was the "insured" as contemplated by the policy under the definition of such, and that it would extend to T. E. Purcell because of Joseph Smith's relation to him as agent for him as a principal at time of the collision, but could not extend to P. E. M. Purcell, whose property was damaged, because the truck insured was neither owned by him, nor rented to him, nor transported by him, nor in his charge at such time. By reason of this, it was contended that even without reformation of the policy, there was no application of the exclusion as regards P. E. M. Purcell's claim for damages as an injured third-party-stranger. The interests of father and son were identical as regards this phase of the appeal, and joint presentation of request for declaration of rights, under the policy as worded, was entirely proper.

■■ Under the situation in this case, as it existed at the time of the institution of the suit, and as of the trial, there was a controversy between the appellee on the one hand—and the appellants, father and son, on the other. A court may enter a declaratory judgment where either a controversy between the parties will be ended by the declaration, or where a useful purpose will be served thereby. While there are conditions and contingencies which may operate even after the entry of a declaratory judgment on the question so that the controversy will not be ended, the declaration of the rights of the parties upon the question, as of the time the suit was tried will certainly serve a useful purpose. It is a justiciable controversy touching upon the legal relations of parties having adverse legal interest upon an actual subsisting legal controversy. Railroad Commission v. Houston Natural Gas Corporation, Tex.Civ.App., Austin, 1945, 186 S.W.2d 117, writ refused, want of merit; and see cases annotated beginning at 142 A.L.R. 25.

■ Interest as to and upon this question being identical and non-controversial as between father and son, the brief filed on behalf of both, though by the same firm of attorneys that represented only one of them upon trial in the court below, is sufficient filing as to both and is a proper compliance with T. R. C. P. 414 and 422, constituting the filing of briefs in behalf of each of them as an appellant. The contention of appellee that the appeal should be dismissed as to T. E. Purcell, who, it contends, has not come forward on the appeal with a brief separately filed for him, is without merit, as the brief filed for both appellants actually constitutes the prosecution of an appeal by each of them.

The collision in question occurred prior to the effective date of the automobile Safety Responsibility Act in Texas. Vernon's Ann.Civ.St. art. 6701h. The nature of liability automobile insurance may be considered, wholly uncomplicated by such statute and without regard to whether that law has operated to affect the construction of a contract of such character of insurance protection. The contract of insurance in question here was one as to which T. E. Purcell (the son) was entirely free to either enter into or not enter into as regards his truck. He was not under any obligation to make a contract of insurance with the appellee insurance company or any other company. Neither was the company obliged to issue its policy of insurance.

■■ It is undisputed that T. E. Purcell, the son, was the person receiving the contract, and that he was the sole owner of the automobile insured thereunder. Liability insurance is insurance which affords indemnity as to potential claims for damage growing out of the operation and use of the vehicle as to which the insurance is afforded. The person desiring to afford himself such protection can provide by such a contract to protect only himself. He can likewise afford such protection to persons using such a vehicle as his agents or with his permission the automobile in question. The form of the policy in question provides for indemnity protection so extended. He can, and often does, have other persons named as an insured in the policy along with him, which makes—As To Such Other Persons—the contract one wherein indemnity protection is afforded to anyone using the vehicle as the agent of such other persons, or using the vehicle with such other person's consent, when contracted for by the form on which such coverage is provided.

■ It so happens that the Texas Standard Form of insurance policy as to liability insurance, and as to which the policy in question is an example, provides by its terms that an "insured" under such a policy (and, as recited by the policy here construed, this is always a person named as such, and also any other person using the automobile with permission of a person named as such) cannot collect for damage done to other property he owns or has in his possession or charge, such as property rented to him or them, or transported by him or them. In the acceptance of such a policy of insurance, thereby contracting as provided by the terms of the policy with respect to the contingent or potential lia-

bility which may become existent upon the occurrence of an accident or collision wherein property is damaged, the primary insured (he who contracts for the policy and accepts the same) has agreed by the very terms of the policy to exclude from its indemnity provisions, as to his own liability, certain persons to whom he might become liable for potential damage. Those persons are such as are named along with him as a named "insured". He makes a contract which impliedly says: "I agree that the insurance protection afforded by this policy does not enure to my benefit and to my protection to indemnify me and pay damages that I might become legally liable for, if such damage should be to the property of the person whose name I have included along with mine as a named 'insured'. If and in the event in my use of the automobile insured under this contract I should run into and damage or destroy his property, I cannot call upon the insurance company to pay for the damage even though I am liable for it."

There is no inhibition of any public policy which denies the right to any person to make such a contract. It would be a contract for the benefit of a third person as to indemnity protection, and in nowise penalizing such third person. Such third person is not penalized in the execution of such a contract because the person making the contract is under no duty to make the contract in the first instance. He can make it or not. It is not without the realm of possibility that a person purchasing a liability insurance policy might for some reason personal to him actually desire that in the event he should in the operation of his automobile damage the property of certain other persons, he would not want the insurance company to be in anywise interested—he might for some personal reason want the liability to be only his own—and this, whether or not by the absence of the existence of the policy he might be execution proof upon a judgment which might be secured against him. He may desire the circumstances to be such that he would certainly pay such damages out of his own pocket, or he may desire in the event a judgment for damages

be obtained against him that the party having such judgment could realize nothing upon an execution, by reason of his being what is commonly termed "execution proof".

Benefits, contingent upon the policy (as to both P. E. M. Purcell as an insured named therein, and as to third persons who might be injured or damaged, initially strangers under the policy) are provided to accrue upon the occurrence of a designated event, to-wit: an accident or collision. The occurrence of such constitutes the original contingency, conditioned upon which the promises the appellee made in the contract became performable. As to the collision in question, P. E. M. Purcell wants declared as his own the benefits contemplated by the policy as accruable to third persons who may be injured or damaged, and wants to avoid the obligations which are coupled with the indemnity benefits afforded him by the policy contract. Only upon the occurrence of accident or collision would circumstances creating any privity As To The Contract in either P. E. M. Purcell, named as an insured, or to injured third persons arise. Even then, liability of the insurance company is contingent. P. E. M. Purcell, were he desiring the indemnity protection as to injured third persons, would be under duty to perform as to the obligations incumbent upon him as an "insured" under the policy provisions, in order that the insurance company would not be prejudiced in its right of opportunity to present any and all defenses to such claims presented against him. Failing in this, the indemnity protection would be forfeited. Even third persons injured in reality must so conduct their claims in such fashion (with view to elimination of potential policy defenses on the part of the insurance company as against its "insured" as would give it a valid defense under contractual provisions on the ground that it had been prejudiced in its rights of opportunity to present the "insured's" defenses) that when the time comes when they have a final judgment against such "insured", they will be able to enforce collection of the judgment as against the insurance company, if the "in-

sured", the person primarily liable, cannot satisfy an execution writ issued upon the judgment obtained against him.

In neither event would there be prior to time of collision and damage any privity of contract, nor of interest therein, by any person for whose benefit the contract was made—whether so made specifically, or conditionally, or contingently. Had the collision and damage in question occurred to property of a third-person-stranger to the contract, rather than to property of P. E. M. Purcell, then P. E. M. Purcell would have never come into privity with the contract, nor of interest therein. In such a case the privity would have been on the part of the third-person-stranger.

The contract being one which contemplated contingent and conditional insurance benefits to such third-persons, strangers to the initial execution thereof, their rights as to the policy are subject to the contractual provisions thereof as made at time they were contractually executed, and such third-persons must accept the contract as it existed, conditional and contingent as it may be, as of the time of the collision.

Upon the question of privity with reference to liability insurance contracts, appellee has cited the well-reasoned case of Kerr v. New Amsterdam Casualty Company, 1937, 251 App.Div. 580, 297 N.Y.S. 889, affirmed in 276 N.Y. 648, 12 N.E.2d 803. See also Williston on Contracts, sec. 364–A.

■ The contract being one specifically made in behalf of P. E. M. Purcell, the father, as to the indemnity protection afforded thereby, coupled with which was the condition excluding appellee's liability thereunder for his own property damage, he must accept the contract as it was made, even though its conditions defeat his entry thereunder as a recipient of insurance benefits. He alleges its execution as a part of his case, and must succeed or fail upon its provisions. Western Union Telegraph Co. v. Douglass, 1911, 104 Tex. 66, 133 S.W. 877.

The execution of the contract was for the father's benefit, though not through his

act. And he is not entitled to any benefits under the policy without complying with the conditions and assuming the liability that the original parties have attached thereto. Elliott on Contracts, sec. 1415.

■ As to the primary party, T. E. Purcell, the son, and as to his entitlement to the indemnity protection under the contract, he is bound by the provisions of the contract as constituting his express agreements. Such provisions eliminate P. E. M. Purcell, the father, as a person as against whom he will be indemnified even though he becomes legally liable in damages to his father. This is the status of the parties if such contract, as it reads, was the one either or both of the primary parties upon the agreement believed was being contracted for. The question as to whether there was an error in the provisions of the contract is discussed in the following portion of the opinion.

An alternative theory of recovery upon which the suit was prosecuted was one in equity for reformation of the policy so that it specify only the name of T. E. Purcell, the son, as party "insured" under the policy. Allegation was that the inclusion of the name of P. E. M. Purcell as an "insured" named in the face of the policy as such, occurred as the result of a mutual mistake, the actual agreement which should have been set out by the contract having been one where only T. E. Purcell and the appellee were the parties to the contract. Alternatively, it was alleged that the policy was so worded as it was and does through the negligence of the local agent of the appellee insurance company, which had full knowledge, by and through its local agent, that P. E. M. Purcell had no interest in the policy, and was not intended to be named therein as an "insured", and therefore appellee was estopped to set up exclusionary clauses in the policy, effective against an "insured", as against him.

■ As regards the relief here prayed for, the reformation of the contract, T. E. Purcell, the son, as a primary party to the insurance contract, is undoubtedly entitled to raise the question. P. E. M.

Purcell, the father, has the right to seek a reformation of the policy along with his son. Such right would obtain under the theory that he was a third party beneficiary thereto, in privity at least as to interest, by and through his son, under the particular circumstances existing at time the suit was instituted, conditional though his interest might be. Binswanger v. Employers' Liability Assurance Corp., 1930, 224 Mo. App. 1025, 28 S.W.2d 448; Williston on Contracts, sec. 1547, and the lengthy discussion under sec. 364–A. The reformation sought is that which relates to the time when the contract was originally entered into, and right thereto would be controlled by the transaction as between the primary parties in privity at such time. At such time P. E. M. Purcell was not in privity to the contract, though certain benefits conditionally accruing to him were provided. There could be no estoppel as against appellee's contention that he was a "named insured", under the facts of this case. His privity arose upon the occurrence of the collision. It is to be doubted that a suit for reformation by him alone could be maintained prior to his obtaining judgment for his damages against T. E. Purcell. However, since appellee makes no objection to his right at this time to try the question, he will be considered a proper party.

■ What we have heretofore stated relative to the propriety of consideration of the one brief filed in behalf of both appellants as constituting an actual prosecution of the appeal by each of them on the part of the judgment relative to declaratory relief, applies as well to the relief sought by way of reformation of the contract. Interest of the father and son upon this question is non-controversial, if not truly identical.

■ The insurance policy contract was unilateral in character. The primary parties thereto were T. E. Purcell and the appellee. The premium consideration therefor was paid by T. E. Purcell, the son, upon delivery of the policy to him. It was a contract whereby the consideration from him was fully discharged upon payment of the premium. There remained the promise on the part of the appellee insurance company, relating to the risks insured, and as to liabilitly for which indemnity was afforded, with promise in addition relating to the conducting of investigation and defense of claims and suits in the event such were made and instituted against persons insured under the policy growing out of a casualty. It became binding and effective as a contract between primary parties upon the acceptance by T. E. Purcell. P. E. M. Purcell was not a primary party to the contract.

■ Where there exists no fraud, misrepresentation, or concealment, it will be presumed as fact that an insurance policy correctly reflects the true contractual agreements between the parties thereto when the party insured accepts the policy without complaint thereof. This presumption may be overcome if there be shown facts and circumstances legally sufficient to excuse the party insured from his failure to read and detect a variance from the true agreement. See cases discussed in 12 Texas Law Review, p. 513 et seq.

■ The law is well settled that a contract may be reformed so as to correctly reflect the true agreement of the parties, where as result of mutual mistake such agreement is not reflected by the contract as written. And as to insurance policies this has been held to obtain even when there have been several renewals of the contract over a period of years, and discovery made after loss occurs which would not be covered under the policy as written, though contemplated to be covered by the initial agreement which resulted in the issuance in the first and subsequent policies. Merchants' & Manufacturers' Inter-Insurance Alliance v. Hansen, Tex.Civ.App., Dallas 1924, 258 S.W. 257, writ dismissed.

■ As regards the facts of the instant case, however, there never appeared to have been any agreement whatever as between T. E. Purcell, the son, and the local agent of the appellee insurance company antecedent to the preparation of the policy. The first time a policy of liability insurance was written on the truck in question, T. E.

Purcell, the son, did not know that he was coming into title and possession of such truck. His father, P. E. M. Purcell, had arranged a transaction whereby he was getting the truck and other equipment which he intended to deliver to the son, but it was to be a complete surprise to the son, and to constitute in a sense a graduation present to him. Subsequently, the father did deliver the truck and other equipment to the son, taking a note from him, which was paid off prior to the time the original policy secured expired as to time. It was before T. E. Purcell, the son, knew he was to get the truck that a discussion was had between his father and the local insurance agent, relating to the issuance of the first policy of liability insurance. The father arranged with the agent that the policy name as its "insureds" both himself and his son, and the policy was so issued. Later on during that policy period it was testified to by both the agent and the father, P. E. M. Purcell, that the two of them agreed to delete the father's name from the policy in question. There was no testimony which disclosed any actual or implied authority from T. E. Purcell to make this change in the policy. Actually the father's name was never deleted from the policy prior to the time it expired by its own terms. There was no ratification of any such a deletion as to name between T. E. Purcell, the son, and the local insurance agent, actuated and occurring through a mistaken belief on their part that the father's name had been deleted.

Subsequently, about the time the first written policy expired by its terms, the local insurance agent drew up and delivered to T. E. Purcell, the son, the policy of liability insurance upon the truck in question, and which policy named both father and son as parties named as "insureds" therein. There was no action taken by any person respecting the ordering of this new policy of insurance. The father, P. E. M. Purcell, testified explicitly that he had no interest in and to his son's business operations after the note was paid off by the son. Nothing done by him was shown to have been done as the son's agent, even with relation to the policy originally issued. As regards the new policy of insurance, it was shown that T. E. Purcell's mother had the authority to pay the bills of the son's business enterprise, and did pay the premium for the insurance policy. The agent never at any time had a conversation with anyone respecting the new policy of insurance on the truck in question. He merely mailed to T. E. Purcell the policy in question, reading as it did, and in due course received the premium in payment therefor. The record does not disclose that any act in any wise relating to the policy in question, or to the prior policy, was performed by any person as agent for T. E. Purcell, the son, as a principal. All this being so, the case was simply one where an agent of the appellee mailed a policy contract to T. E. Purcell, receiving the premium consideration in return.

Granting the appellant T. E. Purcell the benefit of considerable doubt, and considering that the local agent of the appellee mistakenly delivered a policy of insurance naming P. E. M. Purcell as an "insured", along with T. E. Purcell, the son, when he intended to only name T. E. Purcell as the "insured" in the policy, nevertheless T. E. Purcell accepted the policy without complaint. Under such circumstances there could be no mutual mistake between appellee and T. E. Purcell, *for the simple reason that there had been no prior agreement between the parties, which in the reduction to writing in the policy was mistakenly reflected*. The only agreement T. E. Purcell ever made, he made when he accepted the policy of insurance, and having accepted the same he could not claim that it did not reflect the contract intended. 24 Tex.Jur., p. 744, sec. 54; 10 Tex.Jur., p. 101, sec. 58.

■ Even granting, however, that there was an issue raised on the question of mutual mistake by considering the testimony of P. E. M. Purcell as to his agreement with the local agent whereby he no longer would be named as a party insured upon the policy on the truck in question, and the testimony of the local agent to like effect, our examination of such testimony brings us to the conclusion that it was never established as a matter of law that even these persons actually arrived at a meeting of the minds whereby P. E. M. Purcell's name would no longer appear as a party insured

upon the policy in question, or upon the policy as to which it was issued in renewal.

At the most an issue of fact was raised for determination by the trier of the facts. There were several analogous transactions about the same time between P. E. M. Purcell and the local agent of the appellee whereby policies of insurance were written or endorsed so that the father's name appeared as a named "insured" along with that of the son. These facts were directly contradictory to testimony of both the father and the insurance agent as to at least the premise upon which it is sought to reform the present contract, and would raise questions of fact. The trial court found such fact questions were raised, but held against appellants thereon.

Judgment of the trial court is affirmed.