## NEW YORK LIFE INS. CO. v. VEITH.
### (No. 5802.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 21, 1917.)

1. INSURANCE ⊙⟹602 — LIFE INSURANCE — FAILURE TO PAY — PENALTY — CONFLICTING CLAIMS—STATUTE.

Where a life insurance company in good faith is in doubt as to whom a policy should be paid, on account of conflicting claims, and places its refusal to pay on that ground, the company has the right to an interpleader; and if it proceeds promptly to make known its decision, it is not liable for penalties, under Rev. St. 1911, art. 4746, prescribing a penalty of 12 per cent. for failure to pay loss within 30 days after demand.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498.]

2. CRIMINAL LAW ⊙⟹308 — EVIDENCE — PRESUMPTION OF INNOCENCE.

An accused person is presumed to be innocent until his guilt is established beyond a reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 731.]

3. INSURANCE ⊙⟹602—LIFE INSURANCE—FAILURE TO PAY—PENALTY—STATUTE.

Where a life insurance company refused to pay policies to insured's wife on the ground that she had murdered him, maintaining its position for a year, before filing interpleader in which it admitted liability, it was liable, under Rev. St. 1911, art. 4746, for a penalty of 12 per cent. for failure to pay the policies within 30 days after demand, since the time for protection from penalties had been lost by the persistent denial of all liability. When insured died, and proofs of death were made, it was the insurer's duty to promptly pay the amount of the policy, promptly file an original suit to determine the person to whom it should be paid, or to promptly file a bill of interpleader.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1498.]

4. CRIMINAL LAW ⊙⟹48 — INSANITY AS DEFENSE.

An insane person cannot commit felony; insanity at the time the alleged offense was committed being an absolute defense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 53–58.]

5. INSURANCE ⊙⟹646(6), 665(5)—LIFE INSURANCE — ACTIONS ON POLICIES — HOMICIDE — BURDEN OF PROOF.

If the felonious killing of an insured person by the beneficiary rendered the policies void, the burden to establish such killing rested on the insurer, and the finding of the coroner, or newspaper accounts of the homicide, did not establish a felony; and the burden did not rest on the beneficiary in her suit against the insurer to establish her innocence of felonious homicide.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1659–1662, 1664, 1719, 1722.]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Suit by Carrie Veith against the New York Life Insurance Company. From a judgment for plaintiff, defendant appeals. Judgment affirmed.

Taliaferro, Cunningham & Birkhead, of San Antonio, and Locke & Locke, of Dallas, for appellant. Terrell & Terrell, of San Antonio, for appellee.

FLY, C. J. Appellee, on January 2, 1915, sued to recover the sum of $5,000, alleged to be due on two insurance policies on the life of her deceased husband, Simon Veith, together with interest at 6 per cent. per annum from September 21, 1914. Appellant answered on January 25, 1915, admitting that it had failed and refused, and still failed and refused, to pay to the appellee any sum whatsoever on the policies, and denied all liability to appellee on the policies. It also answered that $823.09 had been borrowed on the policies, and asked that, if appellant was found liable, that sum be deducted from the policies. On November 13, 1915, over ten months after the suit was filed, and nearly 10 months after the original answer was filed, an amended answer was filed, in which liability on the policies was admitted by appellant, and that it was ready and willing to pay the sum of $4,229.52 on the policies, and that the only reason that it had not paid the same before was because it did not know to whom the money should be paid. It prayed that the two minor children of the deceased and appellee be made parties. The cause was tried without a jury, and judgment rendered in favor of appellee for the aggregate sum of $5,668.20, of which sum the principal was $4,229.52, interest at 6 per cent. from November 9, 1914, to June 30, 1916, $416.56 attorneys' fees, 10 per cent. principal and interest, $464.60, and statutory penalty of 12 per cent. on principal and interest, $557.52. The children, through their guardians, disclaimed any interest in the policies, in which Mrs. Carrie Veith was named as the sole beneficiary.

The facts in this case are: That Simon Veith, the husband of appellee, was killed by a gunshot wound in the head, on September 21, 1914. That on July 8, 1907, deceased had procured two policies for $2,500 each on his

life, payable in case of his death to Carrie Veith, appellee herein. He afterwards borrowed $820 from appellant on the policies. That on or about October 23, 1914, due notice was given to appellant, and on or about November 5, 1914, appellee furnished appellant with proofs of the death of Simon Veith, upon forms furnished by it. Corrected proofs were furnished appellant on November 12, and on November 13, 1914, appellant wrote appellee's attorney:

"It appears in said papers that Simon Veith 'came to his death by pistol wound inflicted by Carrie Veith.' Under the circumstances this company, therefore, denies all liability under said policies, and returns herewith the documents you have submitted."

On November 14, 1914, appellant wrote appellee's attorney:

"This letter is to confirm following telegram which has just been sent you: 'Do not complete claim under policies forty twenty seven, seven thirty eight and nine, Simon Veith. Home Company advises company is denying liability under these policies.'"

At the request of appellant full newspaper accounts of the killing were sent by appellee. Those accounts stated that appellee had been arrested and charged with the murder of her husband. Formal demand of payment of the policies was made on November 16, 1914, and, being refused, on January 2, 1915, suit was instituted by appellee against appellant. As hereinbefore stated, appellant, in its original answer, denied all liability on the policies.

[1] In Article 4746, Revised Statutes, it is provided that where a loss occurs, if a life, or other named, insurance company—

"shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve per cent. damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss."

That language is clear, and no exception has been ingrafted on it by the courts of Texas, except where the insurance company should be in doubt as to whom the policies should be paid on account of conflicting claims, and the company has the right, under the law and facts, to an interpleader, and it proceeds promptly to make known its position, it would not be liable for the penalties. Stevens v. Insurance Co., 26 Tex. Civ. App. 156, 62 S. W. 824; Insurance Company v. Woods Bank, 107 S. W. 114. Construing the old statute on the same subject, this court in the case last cited held:

"A literal construction of that statute would authorize the penalty and attorney's fees against life and health insurance companies in every case in which payment was not made of any loss, after demand, no matter what the circumstances might be. The statute, however, must be given a reasonable construction, and it cannot be maintained that, where there are rival claimants to the amount due on a life policy, the insurance companies by an original suit, or by way of answer when sued, might not interplead the different claimants and cause them to settle their disputes in the courts of the state, and the insurance companies be thereby protected from being harassed and possibly from a double payment of the loss incurred. * * * Of course it must appear that the refusal to pay was made in good faith for the purpose of discovering the true and lawful owner of the fund, and not for * * * gaining time, or for any other ulterior object."

In the case of Nixon v. Insurance Co., 100 Tex. 250, 98 S. W. 380, 99 S. W. 403, it was held:

"The remedy of interpleader is an equitable one, and is for the protection of the disinterested and innocent stakeholder, who claims no interest in the money or property as a claimant or litigant, and who by reason of the conflicting claims of persons, who derive their title either from a common source or one from the other, and the uncertain and doubtful position in which he is placed by the diverse claimants, knows not what to do, and, fearing he may be hurt by some of them, asks instructions and protection from a court of equity."

As said in the opinions last cited, the question is one of good faith on the part of the insurance company, which must have grounds for anticipating rival or antagonistic claims, and it must place its refusal to pay on that ground. In the case of Insurance Company v. Woods Bank, the company, as soon as suit was filed, admitted its liability, and promptly assumed the position of a stakeholder, and deposited the money in the court. So in the other cases cited. In none of them was liability denied, but it was admitted, and aid of the court sought to determine to whom the fund belonged. It was well said, however, in the case of National Life Association v. Parsons, 170 S. W. 1038, after citing and quoting from Woods Bank v. Insurance Co.:

"We have no quarrel with that decision, but, on the contrary, approve it; but that case is not authority for the contention here made that an insurance company which fails to pay a loss after proper proofs have been submitted and within 30 days after due demand is not liable for the penalty and attorneys' fees upon the loss being established in court, when the refusal to pay is based solely upon * * * nonliability made in good faith."

No question as to the good faith of a defense to the policy can be interposed to prevent collection of the penalties; but the only exception to the statute is when an interpleader is sought in good faith and promptly. If the question of good faith as to a defense was allowed to intrude itself into the trial of cases against insurance companies, it would be a difficult matter to ever obtain a judgment for penalties.

[2, 3] In this case the defense was inaugurated on the ground that the policy had become invalid because appellee had been accused of killing her husband. The conclusion was reached at once that appellee had not only killed her husband, but had feloniously killed him. The principle of the law, that an accused person is presumed to be innocent until his guilt is established beyond a reasonable doubt, was ignored, and the position assumed that, because there had been a homicide, murder had been committed. It required over a year to change this opinion, for

it was a year after refusal to pay appellee before the interpleader was filed, in which liability was admitted. Up to that time all liability had been denied. The time for protection from the penalties had been lost by the persistent denial of all liability.

[4] The amended answer alleged the insanity of appellee when her husband was killed, and although, in connection with that plea, it is alleged "that the death of the said Simon Veith was caused by the plaintiff, who feloniously slew him," it is a proposition which cannot be sustained in law, for an insane person could not be a felon. The insane person is incapable of committing a crime, and insanity at the time the offense was committed is an absolute defense. It follows that the amended answer· does not charge that Simon Veith was feloniously killed.

But, if it had been charged that Simon Veith had been murdered by his wife, it could not profit appellant, because it is admitted that appellant owes the money, and what does it matter to appellant whether the ·money goes to appellee or to her children? No attempt is made to defend on the ground that an administrator might be appointed, who might claim that the acquittal of appellee of the charge of murder did not establish her innocence so far as the insurance money was concerned, and that the money could be claimed by creditors. We do not intimate that such a defense could be maintained, but because of the argument in the brief that an administrator would probably be the one entitled to recover. That argument, however, has no basis in the pleadings or assignments of error.

Appellant quotes the following language from the opinion of this court in Stevens v. Germania Life Ins. Co., hereinbefore cited, as justifying its refusal to pay the policies:

"We are of opinion that in a case where the beneficiary is uncertain by reason of conflicting claims, and the company has a right to a bill of interpleader, as in this case, and it proceeds promptly and properly in this regard, as has been determined here, it is not liable for penalties."

That undoubtedly is the law, as enunciated by the courts of this state, but it carries with it no aid, comfort, or justification to appellant. There were no conflicting claims set up by appellant when it refused to pay, and in fact there were no conflicting claims' at that time. If, however, there were conflicting claims, appellant knew that fact as well at the time of the refusal as when it filed its bill of interpleader a year afterwards, because the papers sent it by appellee showed that there were two children, the offspring of Simon Veith and appellee. It cannot, therefore, obtain the benefits of one who "proceeds promptly and properly" to interplead rival claimants, described in the Stevens Case and the Woods Bank Case. As said in the last-named case the interpleader cannot be used to evade or postpone payment of insurance policies, even though it should eventually be ascertained that there were rival claimants. Appellant cannot be permitted ·to deny all liability to the beneficiary named in an insurance policy for a year, and then, when it ascertains it cannot maintain its defense, file an interpleader in order to escape the statutory penalties. No case has been cited which tends in the least to justify the acts of appellant.

[5] When Simon Veith died, and the proofs were made, it was the duty of appellant to promptly pay the amount of the policies, to promptly file an original suit to determine the person to whom it should be paid, or to promptly file a bill of interpleader, and in case it did neither it must pay the penalties, if its defenses were not sustained. If the felonious killing of the insured person by the beneficiary would render the policies of insurance void, the burden to establish the felonious killing rested upon the insurance company, and the finding of the coroner, or newspaper accounts of the homicide, would not establish a felony, and the burden would not rest on the beneficiary to establish her innocence of felonious homicide. She went into every court clothed with the presumption of her innocence, and to. defeat her rights the burden would. rest on her accuser to establish her guilt. She could not be deprived of her right of trial by jury, and her rights jeopardized, by the judgment of an insurance company. Appellant made no effort to show the· guilt of appellee, but, on the other hand, admitted her innocence by admitting her insanity. In all the cases cited by appellant, to show that a beneficiary in a policy of insurance who murdered the insured could not recover, which are accessible to this court, it appears that proof of the felony was either offered and refused, or was made by the insurance company.

The judgment is affirmed.