Constance **MARINEAU**, Appellant,

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY,**
Appellee.

No. 2–93–090–CV.

Court of Appeals of Texas,
Fort Worth.

April 13, 1995.

Rehearing Overruled June 8, 1995.

---

---

J. Patrick Gallagher, Gallagher Law Office, H. Dustin Fillmore, K. Marvin Adams, The Fillmore Law Firm, P.C., Fort Worth, for appellant.

William L. Latham, Greg S. Hargrove, David W. Kirkman, McDonald Sanders, Fort Worth, for appellee.

Before LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant Constance Marineau appeals from a partial summary judgment and final judgment in favor of appellee General American Life Insurance Company ("General American") creating a constructive trust and holding that General American was entitled to retain that part of the proceeds of a life insurance policy in proportion to the percentage of the premiums paid with funds appellant's husband embezzled from General American. The final judgment set the division of the proceeds at 68.1% for General American and 31.9% for appellant. Appellant contends in sixteen points of error that the trial court erred in: (i) awarding part of the insurance policy proceeds to General American; (ii) failing to award attorney's fees, statutory penalties, pre-judgment interest, and post-judgment interest; and (iii) making the various findings of fact and conclusions of law supporting the judgment. In three cross-points, General American contends that the trial court erred in awarding any part of the proceeds to appellant.

We affirm in part, reverse and render in part.

Charles Marineau, appellant's late husband, was an agent for General American. From 1985 to 1989, Charles forged and converted checks meant for General American and deposited those checks into his own account (the "Account"). The total amount of converted checks was $434,077.55. Of this amount, $83,993.91 was returned to General American or its customers. Thus, the net amount embezzled was $349,083.64. The net amount deposited into the Account during this period was $512,594.32. In August of 1985, Charles purchased a $300,000.00 life insurance policy from General American on his life, with his wife Constance as beneficiary. Premiums were paid out of the Account which contained the embezzled funds. In March of 1989, Charles committed suicide, and Constance demanded the entire face amount of the policy, even though the embezzlement is conceded. General American sought a declaratory judgment determining the rights of the parties to proceeds of the life insurance policy. The only witness to address the question of which funds were used to pay the premiums simply determined the proportion of embezzled deposits to legitimate deposits over the life of the Account. The court then applied this proportion in dividing the proceeds of the policy.

 In her third point of error, appellant asserts that the trial court erred in making conclusion of law no. 3 that "Constance Marineau has the burden of proving what portion of the premiums of the life insurance policy were paid with funds not converted from General American by Charles E. Marineau." A plaintiff seeking to recover embezzled funds has the initial burden to trace the embezzled funds into specific property. *Meyers v. Baylor University*, 6 S.W.2d 393, 394 (Tex.Civ.App.—Dallas 1928, writ ref'd). Once the plaintiff traces the embezzled funds into specific property, that property becomes the subject of a constructive trust. *Moseley v. Fikes*, 126 S.W.2d 589, 597 (Tex.Civ.App.—Fort Worth 1939), *aff'd*, 136 Tex. 386, 151 S.W.2d 202 (1941); *Meyers*, 6 S.W.2d at 395. If property is purchased with funds from an account containing both embezzled funds and funds belonging to the wrongdoer, that property is the subject of the trust, unless the wrongdoer can prove that the subject property was purchased with the wrongdoer's own funds, and not embezzled funds. *Maryland Casualty Co. v. Schroeder*, 446 S.W.2d 117, 120–21 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.); *Moseley*, 126 S.W.2d at 597; *Meyers*, 6 S.W.2d at 394–95. Here, appellant does not contest the court's findings that Charles Marineau did embezzle money from General American, that the embezzled funds were deposited in the subject account, and that the policy premiums were paid out of the commingled account. General American thus met its initial burden of tracing the embezzled funds into specific property. The burden then shifted to appellant to prove that the premiums were paid with Charles' funds, either in whole or in part. Point of error three is overruled.

In points of error one, eight, and nine, appellant contends the trial court erred in:

(1) granting a partial summary judgment decreeing that "General American Life Insurance Company is the owner of that portion of the proceeds of the life insurance policy issued on the life of Charles Marineau which is a ratio of the amount of premiums paid by embezzled funds bears to the total amount of premiums paid on the policy" because such partial summary judgment is in contravention of article 21.22 of the Texas Insurance Code; (8) making conclusion of law no. 10 that "General American's right to a portion of the proceeds of the life insurance policy is based upon its ownership of the policy and not its status as a creditor of Marineau"; and (9) making conclusion of law no. 11 that to the extent of General American's ownership interest in the life insurance policy, article 21.22 of the Texas Insurance Code does not preclude General American from receiving that portion of the insurance proceeds. This provision of the Insurance Code, as it existed during the times pertinent to this case, (March 24, 1987 through August 31, 1991), provided:

> No money or benefits of any kind to be paid or rendered to the insured or any beneficiary under any policy of insurance issued by a life ... insurance company ... shall be liable to execution, attachment, garnishment or other process or be seized, taken or appropriated or applied by any legal or equitable process or operation of law *to pay any debt or liability* of the insured or of any beneficiary, either before or after said money or benefits is or are paid or rendered, except for premiums payable on such policy or a debt of the insured secured by a pledge thereof.

Act of March 12, 1987, 70th Leg., R.S., ch. 5, § 1, 1987 Tex.Gen.Laws 22 (emphasis added). Appellant argues that this statute prohibits the trial court's declaration that General American is a part owner of the policy under a constructive trust theory.

There is no Texas law directly on point. The general rule followed by a majority of jurisdictions is that a person who wrongfully uses stolen or fraudulently obtained funds to purchase an insurance policy shall hold that policy and its proceeds in trust for the benefit of the one from whom the funds were stolen or taken.[1] This may be true even where a statute protects the proceeds of insurance policies from actions by creditors. *See First Nat'l Bank v. Pope*, 270 Ala. 202, 117 So.2d 174 (1959); *Mullikin v. Pedersen*, 161 Neb. 22, 71 N.W.2d 485 (1955); R.L. Mowson, Annotation, *Right with Respect to Proceeds of Life Insurance of One Whose Funds Have Been Wrongfully Used to Pay Premiums*, 24 A.L.R.2d 672 (1952) (Later Case Service 1982 & Supp.1994).

The only Texas cases which even peripherally address the issue are *Maryland Casualty Co.*, 446 S.W.2d at 120–21, and *Davis v. Tennessee Life Ins. Co.*, 562 S.W.2d 868, 871 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). In *Maryland Casualty*, an employee embezzled money from a savings and loan association, and used those funds to purchase property, including insurance policies. The court of appeals held it was error for the trial court to fail to impose a constructive trust on the property, including insurance policies, purchased in part with the embezzled funds, where the finder of fact traced the embezzled funds to the property. The *Maryland Casualty* court did not consider Texas Insurance Code section 21.22 because the insured was still alive at the time of the suit.

■ In *Davis*, an employee was insured under a life insurance policy owned by his employer. The employee designated his mother as the beneficiary of the policy. When the employee died, his wife sued for half of the proceeds of the policy, on the theory that the policy was community property. The appeals court, in affirming the

---

1. *E.g., Brodie v. Barnes*, 56 Cal.App.2d 315, 132 P.2d 595 (1942); *Board of Pub. Instruction for Bay County v. Mathis*, 132 Fla. 289, 181 So. 147 (1938); *Jansen v. Tyler*, 151 Or. 268, 47 P.2d 969 (1935); *Exchange State Bank v. Poindexter*, 137 Kan. 101, 19 P.2d 705 (1933); *Truelsch v. Northwestern Mutual Life Ins. Co.*, 186 Wis. 239, 202 N.W. 352 (1925); *Massachusetts Bonding & Ins.*

*Co. v. Josselyn*, 224 Mich. 159, 194 N.W. 548 (1923); *Thum v. Wolstenholme*, 21 Utah 446, 61 P. 537 (1900); *Holmes v. Gilman*, 138 N.Y. 369, 34 N.E. 205 (1893). *See also Lohman v. General Amer. Life Ins. Co.*, 478 F.2d 719 (8th Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 162, 38 L.Ed.2d 107 (1973).

trial court's take-nothing judgment against the wife, reasoned as follows:

> The right to receive insurance proceeds payable at a future but uncertain date is "property." Such property is said to be in the nature of a chose in action which matures at the death of the insured. When the policy is purchased with community funds, the ownership of the unmatured chose belongs to the community, unless, *in the absence of fraud,* it has been irrevocably given away under the terms of the policy. The proceeds at maturity are likewise community in character, except where a named beneficiary is surviving, in which case a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured. *Brown v. Lee,* 371 S.W.2d 694 (Tex.1963).
>
> The same principles would seem to be applicable in the case where the insurance premiums were paid with partnership funds. Even in a case where such a payment is made by one partner without the authorization of the other partners, the proceeds of the policy would belong to the named beneficiary rather than to the partnership. While the partner who is guilty of the unauthorized use of the partnership funds might be liable to his partners for the funds used, his conduct would not affect the insurance company's liability to the named beneficiary, or create a right in his partners against the insurance company.

*Davis,* 562 S.W.2d at 871 (emphasis added). Again, the court did not mention section 21.22 of the Texas Insurance Code in its reasoning, nor was it raised by the facts of the case. Appellant cites this second paragraph as authority for the proposition that the ownership of the insurance proceeds remains with the beneficiary even where the premiums are paid with funds obtained fraudulently. This partnership hypothetical, which clearly is dicta to the *Davis* court's holding, is stated without any authority. We agree with the dicta in *Davis* to the extent that it suggests that the insurer is not excused from paying the proceeds of the policy. Further, we agree with the holding in *Davis,* stating that in the absence of fraud, the beneficiary of the policy, and not the owner of the funds used to pay the premiums, is the proper recipient of the insurance policy proceeds. We decline to follow *Davis* to the extent that it suggests that a beneficiary is entitled to the proceeds of a policy where that policy's premiums are paid with funds obtained fraudulently. The view of the majority of states, we believe, is the better policy. The statutory exemption of life insurance proceeds from liability for debts should not be used as a shield for fraud, as appellant's husband here attempted.

We do not believe the language of section 21.22 of the Texas Insurance Code prohibits this result. Section 21.22 only protects insurance policy benefits owed to the beneficiary from the actions of *creditors* to "pay any debt or liability." This is not an action by an insurance company to recover unpaid premiums, or some other debt owed to the insurance company. The question here is one of ownership of the policy prior to the death of the insured. The protection of section 21.22 does not take effect until the death of the insured. Appellant does not attack the trial court's finding that Charles Marineau embezzled funds from General American, and that a portion of these funds was used to pay the premiums for the insurance policy in question. Appellant simply argues that the statute prohibits us from reaching the equitable result. We hold that when an insurance policy's premiums are paid with funds fraudulently obtained, the beneficiary of the policy holds the future proceeds from that policy in trust for the owner of the defrauded funds. Points of error one, eight and nine are overruled.

In points of error four, five, six, seven, eleven, and thirteen, appellant asserts that the trial court erred in: (4) making conclusion of law no. 4 that "General American is the owner of the life insurance policy and its proceeds to the extent that funds converted from General American were used to pay premiums to purchase the life insurance policy"; (5) making conclusion of law no. 7 that "General American is the owner of 68.1% of the life insurance policy and its proceeds"; (6) making conclusion of law no. 8 that "General American is entitled to receive 68.1% of

the proceeds from the life insurance policy"; (7) making conclusion of law no. 9 that a "constructive trust in the life insurance policy was created in favor of General American to the extent that funds converted from General American were used to pay premiums to purchase the policy"; (11) making conclusion of law no. 16 that "General American is entitled to receive 68.1% of the proceeds of the life insurance policy and Constance Marineau is entitled to receive 31.9% of the proceeds of the life insurance policy"; and (13) failing to enter judgment awarding appellant all benefits payable under the life insurance policy.

In its three cross-points, General American contends that the trial court erred in: (1) making finding of fact no. 27 that 31.9% of the premiums on the life insurance policy were paid with funds not converted from General American because there is no evidence to support that finding as a matter of law; (2) making conclusions of law nos. 5, 6, 7, 8, and 16 that General American is entitled to receive only 68.1% of the proceeds of the life insurance policy and Constance Marineau is entitled to receive 31.9% of the proceeds of the life insurance policy because as a matter of law, General American is presumed the owner of all the proceeds when appellant failed to meet her burden of proof by tracing each payment to funds not converted; and (3) entering a judgment declaring General American is entitled to receive only 68.1% of the proceeds of the life insurance policy and Constance Marineau is entitled to receive 31.9% of the proceeds of the life insurance policy when there is no evidence to support such a judgment awarding Marineau any part of the proceeds.

■ As previously discussed under point of error three, once General American proved that embezzled funds were commingled into the Account used to pay the insurance policy premiums, the burden shifted to appellant to prove that part or all of the insurance premiums were paid with funds belonging to Charles Marineau. General American contends that appellant failed to meet this burden by only offering evidence of the proportion of embezzled money to personal money deposited into the Account used

to pay the insurance premiums. In General American's view, appellant would have had to prove the ownership proportion of each payment to calculate the ownership of the policy, and absent such proof, the presumption is that all of the commingled funds are held in trust. We disagree. Neither party has cited any Texas case addressing the proof necessary to rebut the presumption that the commingled funds belong to the trust, or the extent of recovery allowed the owner of the embezzled funds when those funds only paid for part of the premiums. After reviewing the case law of other jurisdictions on this point, we feel the reasoning of the court in *G & M Motor Co. v. Thompson*, 567 P.2d 80 (Okla.1977), is appropriate in this case. The court there held that the employer of the embezzling employee was entitled to a pro rata share of the life insurance policy proceeds where the wrongfully acquired funds were partially used to pay the premiums. *Id.* at 84. Recovery was limited to the total amount of embezzled monies, interest, and costs. *Id.*

The only testimony about the proportion of embezzled funds to personal funds used to pay the premiums was by J. Lee Askins, a certified public accountant. He testified that there are several possible methods for calculating the proportion of ownership of the policy. While admitting that the method proposed by General American would be valid, he testified that the averaging method which he used was more appropriate given the regular pattern of premium payments made by Charles. General American did not rebut appellant's expert testimony with the contrary opinion of another expert supporting its method of calculating ownership. We hold that the uncontroverted testimony of appellant's expert was sufficient to meet her burden to trace Charles' personal funds used to pay the insurance premiums, and thus to establish the proportion of ownership of the policy proceeds. The trial court's findings of fact and conclusions of law supporting its judgment that General American owned 68.1% of the policy proceeds, and that appellant owned 31.9% of the proceeds, were supported by the evidence. Appellant's points of error four, five, six, seven, eleven, and thir-

teen, and General American's cross-points one, two and three, are overruled.

In points of error two, ten, twelve, fourteen, and fifteen, appellant contends the trial court erred in: (2) making finding of fact no. 6 that "there existed a genuine controversy between General American and Constance Marineau concerning who owns and who is entitled to the proceeds of the life insurance policy"; (10) making conclusion of law no. 15 that "General American has properly brought this declaratory judgment action to determine the respective rights of it and Constance Marineau to the life insurance policy and its proceeds"; (12) making conclusion of law no. 17 that "it would be equitable and just for each party to bear their own court costs and attorneys' fees"; (14) failing to award appellant attorney's fees as provided in article 3.62 of the Texas Insurance Code; and (15) failing to award appellant the penalty provided by article 3.62, which read:

> In all cases where a loss occurs and the life insurance company ... liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, twelve (12%) per cent damages on the amount of such loss together with reasonable attorney fees for the prosecution and collection of such loss. Such attorney fee shall be taxed as a part of the costs of the case. The Court in fixing such fees shall take into consideration all benefits to the insured incident to the prosecution of the suit, accrued and to accrue on account of such policy.

Act of June 7, 1951, 52nd Leg., R.S., ch. 491, § 3.62, 1951 Tex.Gen.Laws 868, 920, *repealed by* Acts 1991, 72nd Leg., ch. 242, § 12.01(2), Eff. Sept. 1, 1991).

■ The only recognized exception to the operation of the statute is when: (1) there are conflicting claims to the proceeds; (2) the insurer promptly and in good faith admits its liability to pay the proceeds to the party found by the court to be the proper recipient; *and* (3) the insurer makes a bona fide tender of the amount due, as part of an interpleader action. *Boomer v. Massachusetts Bonding & Ins. Co.*, 148 S.W.2d 945,

949 (Tex.Civ.App.—El Paso 1941, writ dism'd) (interpreting Tex.Rev.Civ.Stat.Ann. § 4736, which was codified without change as Tex.Ins.Code Ann. art. 3.62 (Vernon 1981)). Good faith of the insurer, by itself, is not a defense to the action of the statute. *New York Life Ins. Co. v. Veith*, 192 S.W. 605, 606 (Tex.Civ.App.—San Antonio 1917, no writ). Where an insurer has doubt that the claimant is entitled to the proceeds of the policy, it may decline to pay the claim, but it then takes the chance of being wrong and incurring statutory penalties and attorney's fees, should it be held liable for the proceeds. *Id.* It is the province of the trial court to fix reasonable attorney's fees under the statute. *Id.*

■ General American argues that the trial court did not abuse its discretion in entering judgment that all parties bear their own costs and attorney's fees since there existed a genuine controversy between the parties and appellant did not prevail on her claim for the entire proceeds of the life insurance policy. This suit arose and was within the jurisdiction of the Texas Declaratory Judgments Act, Tex.Civ.Prac. & Rem.Code Ann. §§ 37.001–.011 (Vernon 1986 & Supp.1995). Under the Act, the trial court is given discretion to award costs and attorney's fees that are equitable and just. Tex.Civ.Prac. & Rem. Code Ann. § 37.009 (Vernon 1986). The trial court's judgment will not be reversed absent a clear showing that it abused that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985).

General American further argues that the mandatory attorney's fees and penalties are due only when the insurer is liable for the full amount demanded, and not, as in this case, where the insurer is only partially liable, and seeks declaratory relief to determine the amount of partial liability. For this proposition it cites *Drane v. Jefferson Standard Life Ins. Co.*, 139 Tex. 101, 161 S.W.2d 1057, 1060 (1942) (interpreting Tex.Rev.Civ. Stat.Ann. § 4736, which was codified without change as Tex.Ins.Code Ann. art. 3.62 (Vernon 1981)). However, *Drane* involves a claim for attorney's fees by a party ultimately found to have no right to any part of the

insurance proceeds, and thus is distinguishable from the facts of this case.

■ Here, appellant initially took the position that General American owed the full $300,000.00 proceeds of the policy, while General American contended that the insurance premiums were paid with funds embezzled from it, and thus General American was the rightful recipient of the proceeds. There was clearly a controversy about entitlement to the proceeds of the policy. A declaratory judgment action was an appropriate means to resolve the controversy. *See Purcell v. Metropolitan Casualty Ins. Co.*, 260 S.W.2d 134, 139 (Tex.Civ.App.—Fort Worth 1953, no writ) (holding declaratory judgment action proper where there is a justiciable controversy between insurer and insureds respecting the legal relations of parties having adverse legal interests). However, the declaratory judgment action does not preclude the operation of article 3.62 of the Texas Insurance Code. *See Lumbermans Mutual Casualty Co. v. Klotz*, 251 F.2d 499, 509 (5th. Cir.1958) (interpreting TEX.REV.CIV.STAT.ANN. § 4736, which was codified without change as TEX. INS.CODE ANN. art. 3.62 (Vernon 1981)).

■ Although the trial court did not award attorney's fees as part of its judgment, finding that "[i]t would be equitable and just for each party to bear their own court costs and attorney's fees," the court also found in its supplementary findings of fact and conclusions of law that appellant's attorney's fees of $32,777.00 were reasonable and necessary. We can only conclude that the trial court's initial determination that both parties bear their own costs was based on the provision of the Texas Declaratory Judgment Act making the award of attorney's fees discretionary. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The supplemental finding of fact, we believe, must have been made to allow for reformation of the judgment by this court if we held award of attorney's fees mandatory under article 3.62 of the Texas Insurance Code. The trial court did not make any finding of fact or conclusion of law regarding penalties under article 3.62. We hold that the penalty and attorney's fees

provisions of article 3.62 are mandatory where the insurer is held liable for any amount under the insurance policy. The judgment must be reformed to include payment by General American to appellant of $32,777.00 in attorney's fees and a statutory penalty of $11,484.00 (12% × 31.9% × $300,000.00). Points of error two and ten are overruled. Points of error twelve, fourteen, and fifteen are sustained.

■ In point of error sixteen, appellant contends the trial court erred in failing to award appellant pre-judgment and post-judgment interest. The insurance policy provided that General American would "pay interest on single sum proceeds from the date of the insured's death to the date of payment. Interest will be at an annual rate determined by us, but never less than the Guaranteed Settlement Option rate." The Guaranteed Settlement Option Interest Rate provision states that General American would "use a guaranteed effective annual rate of 2½% in computing payments under all options. We may pay interest in excess of this amount." No evidence was introduced to show what interest rate would have been paid by General American. Article 5069–1.03 of the Texas Revised Civil Statutes provides that:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987). The date of Charles Marineau's death was March 20, 1989. Therefore, pre-judgment interest of six percent per annum should accrue from April 19, 1989 through the date of judgment, December 31, 1992. We calculate that amount to be $21,268.99. General American concedes that if any amount is due to appellant, the judgment should be reformed to award post-judgment interest of ten percent in accordance with article 5069–1.05 of the Texas Revised Civil Statutes.[2] Point of error sixteen is sustained.

**2.** Appellant did not introduce any article 5069–

1.03 evidence of the specific rate of interest;

We affirm the judgment of the trial court in all matters except attorney's fees, statutory penalties, pre-judgment and post-judgment interest. We reverse that portion of the judgment of the trial court which orders that "all taxable court costs are adjudged against the party by whom incurred." We render judgment to award appellant attorney's fees of $32,777.00, statutory penalties of $11,484.00, pre-judgment interest of $21,-268.99, and post-judgment interest of ten percent per annum from the date of judgment, December 7, 1992, through the date of payment, in addition to the relief granted appellant by the trial court. We further render judgment that all other taxable trial court costs are adjudged against the party by whom incurred. We order that the judgment of the trial court is reformed accordingly.

therefore, the catch-all provision of section two governs. That provision provides that the judgment shall earn interest at the rate published by the Consumer Credit Commission in the Texas Register, with a minimum rate of ten percent (10%). TEX.REV.CIV.STAT.ANN. art. 5069–1.05, § 2 (Vernon 1987). The rate published on December 11, 1992 by the Commission for judgments was ten percent for the month of December 1992. 17 Tex.Reg. 8768 (1992).