*1063 EDITH H. JONES, Chief Judge:
The question presented in this bankruptcy appeal is whether an annuity purchased by a debtor couple the day before they sought bankruptcy relief is, under the facts here presented, exempt under Texas law, Tex. Ins. Code Ann. § 1108.051, or non-exempt because it was “a premium payment made in fraud of a creditor .... ” Tex. Ins. Code Ann. § 1108.053. According to the debtors’ repeated representations to the bankruptcy and district courts, this annuity was purchased not simply “to maximize the debtors’ exemption claims” but to manipulate an inheritance that the debtor Andres Alejandro Soza (“Soza”) may ultimately share with his siblings. Because the debtors’ purpose in purchasing this annuity had nothing to do with the rehabilitative goal of Texas’s exemption laws, they could not legitimately claim the exemption. Accordingly, the judgment of the district court, reversing the bankruptcy court’s denial of exemption, must itself be reversed, and the case is remanded for further proceedings.
On October 13, 2005, Soza and his wife, Mary Rachel C. Buzo, transferred $30,000 into a Mutual of Omaha annuity. The next day they filed a voluntary Chapter 7 bankruptcy petition.[1] Joseph Hill was appointed Trustee of their bankruptcy estate. The debtors’ bankruptcy schedules listed just under $30,000 in unsecured debt and $340 in non-exempt property. The debtors identified the annuity as an asset valued at $30,000, and they claimed an exemption pursuant to § 1108.051 of the Texas Insurance Code.
The trustee objected to the exemption because the statute does not apply to “a premium payment made in fraud of a creditor.” Tex. Ins. Code Ann. § 1108.053. Relying on the debtors’ petition and schedules, the trustee argued that their conversion of non-exempt property into an exempt annuity on the eve of bankruptcy amounted to “constructive fraud” detrimental to the creditors. In response, the debtors contended that the law permits them to maximize their exemptions, and there was no proof that they intended to defraud the creditors.
At the hearing on the trustee’s objection, the debtors asserted for the first time that the money with which they purchased the annuity had recently been inherited from Soza’s father. Their attorney represented to the court that the debtors used the inheritance to purchase the annuity for safekeeping until they could decide how the inheritance was to be distributed among Soza and his siblings. The attorney said his clients feared that unless the inheritance was placed out of reach of the creditors by means of an annuity, the trustee would attempt to litigate the debtors’ share of ownership or would pursue Soza’s siblings for the transfer of their shares. Alternatively, counsel feared he would have to delay the bankruptcy filing by one year to avoid the fraudulent transfer provision of the Bankruptcy Code. 11 U.S.C. § 548(a)(1) (2005), amended by Pub.L. No. 109-8, § 1402, 119 Stat. 23, 214 (effective Oct. 17, 2005).
The bankruptcy court and counsel for the trustee were taken aback by these representations, which were contrary to the debtors’ sworn schedules identifying the annuity as their property. The court rejected the debtors’ untimely attempt to *1064 offer the will and Soza’s testimony about it. Nevertheless, all parties recognized a looming issue over the true ownership of the inheritance. The court proceeded, however, to adjudicate the objection without reference to the inheritance claim. The court held that § 1108.053 of the Texas Insurance Code, although somewhat ambiguous, proscribes constructive as well as actual fraud on creditors. It found, based on the pleadings and undisputed facts, that the debtors’ conversion of nonexempt property into an exempt annuity on the eve of bankruptcy amounted to constructive fraud. The court denied the exemption.
The debtors appealed to the district court, reiterating their claim about the inheritance in their brief:
The check was received in August 2005 and would have been shared with [Soza’s] eight siblings and the children of the deceased brother, but with the uncertainty of the October changes to the bankruptcy law, [Soza] did not want to delay the bankruptcy a year to avoid the possibility of the trustee trying to undo payments to family members.
The district court upheld the bankruptcy court’s refusal to consider this as an untimely contention, but it reversed the bankruptcy court and approved the exemption under Texas law. Like the bankruptcy court, the district court found no explicit textual guide to whether the statute depends on actual or intended fraud of a creditor or whether “something less than intent is sufficient” to violate the provision. Soza v. Hill (In re Soza), 358 B.R. 903, 907 (S.D.Tex.2006). The court’s reasoning proceeded in three steps. First, the court noted that the timing of the annuity purchase, standing alone, was not sufficient to prove actual intent to defraud creditors. Second, the court analogized the “constructive fraud” interpretation of the statute with the Texas Uniform Fraudulent Transfer Act (“TUFTA”) provisions that invalidate a debtor’s transfers made for less than reasonably equivalent value. See Tex. Bus. & Com. Code Ann. § 24.005(a)(2). Because the annuity here was purchased for full value, constructive fraud as defined in TUFTA could not exist. Third, the court held that in the absence of a fiduciary duty relationship arising from other circumstances, the common law doctrine of constructive fraud does not apply to debtor-creditor relations in Texas. Relying, finally, on the principle that Texas interprets debtors’ exemptions broadly, the court concluded that even if constructive fraud is covered by § 1108.053, the trustee had not borne his burden of proof.
Now finding themselves the appellees, the debtors no longer assert that the payment for the annuity sprang from an inheritance in which Soza owns a potentially small share. Instead, they vigorously defend the district court’s opinion and criticize the trustee for having failed to present evidence to support his attack on the exemption. The debtors do not, however, disavow their counsel’s representation to both lower courts that the annuity was purchased not to provide them a future stream of income, but to remove its corpus from the bankruptcy court in order to avoid the uncertainty of bankruptcy litigation involving them or Soza family members. This clever strategy, taken together with other facts, provides a more complex backdrop for application of the Texas annuity exemption laws than the simple eve of bankruptcy transfer on which the bankruptcy and district court opinions were predicated. Although these circumstances might not sustain a finding of actual intent to defraud the debtors’ creditors, and the trustee did not so argue in the lower courts, they highlight the importance of determining whether the exception to an *1065 nuity exemptions for a “premium payment made in fraud of a creditor” includes intentional fraud as well as something less than intentional fraud.
At first glance, what the Legislature intended to describe as “fraud of a creditor” seems unclear in the context of life insurance policies and annuities obtained by debtors. There is no controlling Texas case law to provide guidance.[2] Read in context with other Texas fraudulent transfer statutes, there is little doubt that § 1108.053 must include intentional fraud as well as conduct less than intentional fraud. The Texas legislature added the “in fraud of a creditor” exception to the Texas Insurance Code’s exemption statute for life insurance and annuity benefits in 1991. See Act of June 15, 1991, ch. 609, § 1, 1991 Tex. Sess. Law Serv. 609 (recodified at Tex. Ins. Code. Ann. § 1108.053). This was two years before the exemption was broadened to include annuity contracts purchased by an individual. See Act of Sept. 1, 1993, ch. 685, § 20.20, 1993 Tex. Sess. Law Serv. 685 (recodified at Tex. Ins. Code. Ann. § 1108.051). As of 1991, at least three fraudulent conveyance provisions in state law required a showing of actual intent to defraud. One of these appears in the Texas Property Code, which prohibits a debtor from converting non-exempt personal property into exempt property “urith the intent to defraud, delay, or hinder” a creditor. Tex. Prop. Code Ann. § 42.004(a) (emphasis added).[3] Since at least 1987, the Texas Family Code has provided that an agreement between spouses to partition marital property “is void with respect to the rights of a pre-existing creditor whose rights are intended to be defrauded by it.” Tex. Family Code Ann. § 4.106(a) (emphasis added). Significantly, Texas adopted the TUFTA in 1987, and it states that a debtor’s transfer “is fraudulent as to a creditor” if made with “actual intent to hinder, delay, or defraud any creditor of the debtor” or if made for a lack of “reasonably equivalent value” under certain additional conditions. Tex. Bus. & Comm. Code Ann. § 24.005(a)(l)-(2) (emphasis added). Under TUFTA, transfers made with either actual intent to defraud a creditor or something less than actual intent (i.e., transfers made “without receiving a *1066 reasonably equivalent value”) are included as “fraudulent” transfers.
The language of these sister statutes indicates that the Texas Legislature clearly knew how to distinguish between provisions defining as fraudulent a transfer made with intent to defraud a creditor and provisions defining a lesser standard than intent to defraud. Because Tex. Ins. Code § 1108.053 uses the general phrase “in fraud of a creditor” rather than specific language requiring intent to defraud we conclude that it encompasses both intentional fraud and conduct less than intentional fraud. The Texas Supreme Court has endorsed this approach to interpretation in holding that “[i]t is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, we believe every word excluded from a statute must also be presumed to have been excluded for a purpose.” Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659 (Tex.1995) (internal quotations and citations omitted).
Still, exactly what conduct less than intentional fraud amounts to fraud on creditors under § 1108.053 is unclear. The parties and the courts below repeatedly describe this “something less than intention” standard as “constructive fraud.” This term is a practical shorthand, but, since it appears nowhere in the statutes, it lacks substantive content and is not susceptible to precise definition.[4] The TUF-TA describes one species of “constructive fraud” in stating that transfers made “without receiving a reasonably equivalent value” are deemed in fraud of creditors. See also Tex. Bus. & Comm. Code Ann. § 24.006(a). Section 1108.053 of the Texas Insurance Code contains no such limitation, nor does § 1108.053 reference TUF-TA’s definition of “constructive fraud.” There is, therefore, no reason to conclude that the more general language of § 1108.053 is limited by TUFTA’s definition of “constructive fraud.” In fact, it would be improper to construe § 1108.053 by attributing a limitation that appears only in another statutory provision. The Texas Supreme Court so held in Laidlaw: “When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded.” 904 S.W.2d at 659.
Ultimately, Texas courts will have to determine how much less than actual intent to defraud suffices to deny exemptions for insurance policies and annuities under § 1108.053. For present purposes, we glean some assistance from the non-exclusive list of eleven factors, commonly known as “badges of fraud”, that courts may consider in determining whether a debtor actually intended to defraud creditors under TUFTA.[5] It may *1067 appear contradictory to consider facts used to infer actual intent to defraud in order to determine “constructive” fraud. Any contradiction, however, is illusory. Factors relevant to determining actual intent to defraud, a higher culpability standard, should be equally probative where something less than actual intent will suffice. When analyzing facts under TUFTA, this court has noted that “[s]ince direct proof of fraud often is not available, courts may rely on circumstantial evidence to establish the fraudulent intent.” Roland v. United States, 838 F.2d 1400, 1402-03 (5th Cir.1988). Not all, or even a majority, of the “badges of fraud” must exist to find actual fraud. Indeed, “[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud.” Roland, 838 F.2d at 1403.
Like TUFTA, the Bankruptcy Code also unwinds transfers made “with actual intent to hinder, delay or defraud” creditors, 11 U.S.C. § 548(a)(1), and may deny discharge on similar grounds. 11 U.S.C. § 727(a)(2). In this connection, courts have identified various “badges of fraud” that tend to evidence a transfer made with intent to defraud under § 548 and § 727:
(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pen-dency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry.
Chastant v. Chastant (In re Chastant), 873 F.2d 89, 91 (5th Cir.1989) (quoting Schmit v. Schmit (In re Schmit), 71 B.R. 587, 590 (Bankr.D.Minn.1987)). See also, e.g., Max Sugarman Funeral Home, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254-55 (1st Cir.1991); Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir.1983); FDIC v. Sullivan (In re Sullivan), 204 B.R. 919, 940 (Bankr.N.D.Tex.1997); In re Moore, 177 B.R. 437, 442 (Bankr.N.D.N.Y.1994); Beckman v. Staats (In re Beckman), 104 B.R. 866, 870 (Bankr.S.D.Ohio 1989).
Taking all the surrounding circumstances in this case into consideration, several of the “badges of fraud” are evident here. We conclude that, even if actual intent to defraud was lacking, the debtors’ annuity purchase constituted a premium payment made “in fraud of a creditor.” Tex. Ins. Code § 1108.053. They purchased the annuity on the eve of bankruptcy. Assuming the payment came from their non-exempt property, the annuity was in an amount that would have covered all of the debtors’ listed debts, and the purchase deprived the creditors of all but $340 in non-exempt assets.
*1068 Significantly, the debtors retained full control of the property — an annuity can always be cashed out. And while this feature is true of all annuities, and thus would not ordinarily be proof of any fraud, here, the temporary and contingent nature of the purchase was conceded. The debtors claimed the annuity as their property on the bankruptcy schedules, yet their counsel assured both lower courts, to the contrary, that the payment was funded by an inheritance to which Soza’s entitlement was uncertain. Their counsel also represented to both lower courts that the annuity was purchased in order to place litigation over Soza’s and his siblings’ property interests in the inheritance beyond the reach of the bankruptcy court.[6]
In 1993, Texas law was modified for the first time to permit personal annuities to be shielded from the claims of creditors. Texas cases have to date upheld annuities sharing the characteristics that they were not self-settled and they were intended to provide payments for the debtors and their families in the future. See In re Foster, 360 B.R. 210, 215 (Bankr.E.D.Tex.2006) (exempting annuity created to disburse state lottery winnings); In re Alexander, 227 B.R. 658, 661 (Bankr.N.D.Tex.1998) (exempting annuity created to pay out structured tort settlement). Not so here. The purpose of these debtors’ purchase was to remove a disputed inheritance from an inquiry, necessary to bankruptcy administration, that would have determined the debtors’ property rights in that inheritance. The annuity was a sham to stave off litigation, not a shield authorized by Texas law to enable the debtor to gain a fresh start.[7]
No doubt Texas law encourages the broad construction of its exemption laws, especially those provisions that lack limitations based on fraud of creditors. See, e.g., NCNB Tex. Nat’l Bank (In re Volpe), 943 F.2d 1451, 1453 (5th Cir.1991) (“Texas courts apply a liberal rule of construction to state exemption statutes.”) (citing cases); Hickman v. Hickman, 149 Tex. 439, 234 S.W.2d 410, 414 (1950) (“[O]ur exemption statutes should be liberally construed in favor of express exemptions, and should never be restricted in their meaning and effect so as to minimize their operation upon the beneficent objects of the statutes. Without doubt the exemption would generally be resolved in favor of the claimant.”). No doubt courts must recognize that some pre-bankruptcy planning is permissible, and that the mere conversion of assets from exempt to nonexempt property on the eve of bankruptcy does not by itself suffice to prove an intent to defraud creditors. First Tex. Sav. Assoc., Inc. v. Reed (In re Reed), 700 F.2d 986, 990-91 (5th Cir.1983).[8] The exemption provided by the instant Texas statute, however, contains its own limitation designed to prevent fraud on creditors, and *1069 its standard is set at something less than intent to defraud. Here, there is considerably more than mere timing to condemn the expedient use of an annuity to thwart the bankruptcy court from determining the extent of the debtors’ interest in property.
CONCLUSION
Under Texas Insurance Code § 1108.053, the annuity purchased by these debtors represented a payment made in fraud of a creditor, and the debtors could not claim an exemption for the annuity. On remand, however, the bankruptcy court will have to explore the extent to which Soza has an ownership interest in the alleged inheritance.
REVERSED and REMANDED.

. The debtors filed for bankruptcy just before the Bankruptcy Abuse Prevention and Consumer Protection Act (“BAPCPA”) came into effect. Pub.L. No. 109-8, 119 Stat. 23 (2005) (codified as amended in scattered sections of 11 U.S.C.). BAPCPA governs cases filed on or after October 17, 2005. Since the debtors filed their bankruptcy petition before October 17, 2005, pre-BAPCPA law governs this case.

. The district court discussed three non-bankruptcy cases involving the predecessor to § 1108.051: Marineau v. Gen. Am. Life Ins. Co., 898 S.W.2d 397 (Tex.Ct.App.1995), Sun Life Assurance Co. of Canada v. Dunn, 134 F.Supp.2d 827 (S.D.Tex.2001), and Leibman v. Grand, 981 S.W.2d 426 (Tex.Ct.App.1998). They are all clearly distinguishable from this case and none of them assists us with interpreting the phrase “in fraud of a creditor.”
Marineau addressed whether the proceeds of an insurance policy that was purchased with embezzled funds could be placed in a constructive trust for the owner of the embezzled funds. The Texas exemption statute then applicable did not even contain an “in fraud of a creditor” exception. See Marineau, 898 S.W.2d at 401 (citing Act of Mar. 12, 1987, ch. 5, § 1, 1987 Tex. Sess. Law Serv. 5).
Similarly, Sun Life addressed whether the proceeds of an insurance policy could be placed in a constructive trust for a beneficiary of the policy whose share of proceeds was wrongfully reduced in violation of a divorce decree. Sun Life never mentions, let alone interprets, the "in fraud of a creditor” exception at issue here.
Finally, Leibman addressed whether sufficient evidence was presented at trial to establish that a debtor had made annuity premium payments in fraud of a creditor. The court determined that there was sufficient evidence to uphold the trial court's finding that the debtor had made payments with intent to defraud his ex-wife. The court provided no analysis of the phrase "in fraud of creditor.”

. The "intent to defraud” language has been in § 42.004(a) since at least 1984. See Act of Jan. 1, 1984, ch. 576, § 1, 1983 Tex. Sess. Law Serv. 3524.

. Because "constructive fraud” appears neither in § 1108.053 nor in Texas's other statutes regarding fraud on creditors, it seems highly unlikely that the Texas Legislature intended to refer to common law "constructive fraud” cases as an interpretive standard for "in fraud of a creditor.”

. Section 24.005(b) of the Texas Business & Commerce Code states:
In determining actual intent under [§ 24.005(a)(1)], consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
(3) the transfer or obligation was concealed;
(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
(6) the debtor absconded;
*1067 (7) the debtor removed or concealed assets;
(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

. In ruling based on the "untimely” assertion by the debtors of their dubious ownership of the inheritance with which they purchased the annuity, we are not deciding the question of ownership. That remains to be decided on remand. Rather, we deem the admissions to the lower courts as binding on what the debtors intended as the purpose of this annuity.

. We do not here imply or hold that other types of annuities would fail the "in fraud of a creditor” test. This case is limited to its particular, above-described facts.

.Note that in In re Reed actually dealt with the denial of discharge under the Bankruptcy Code, for which actual intent to defraud creditors is the standard. 11 U.S.C. § 727(a)(2). In re Reed expressly declined to consider whether under Texas property law, an exemption would be denied for the acquisition of personal property acquired with the intention of defrauding creditors. In re Reed, 700 F.2d at 990 n. 2 (citing predecessor to Tex. Prop. Code Ann. § 42.004(a)).