# Supreme Court of Texas

No. 21-0843

American National Insurance Company,

*Petitioner*,

v.

Bertha Arce, Individually
and as Representative of All Others Similarly Situated,

*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

JUSTICE YOUNG, concurring.

To defeat an insured's recovery under a life-insurance policy on the grounds of misrepresentation, § 705.051 of the Insurance Code lists two elements that an insurer must establish: that the misrepresentation (1) was of a material fact and (2) affected the risks assumed. The Court holds today that the insurer must establish a *third* element: that the misrepresentation was made with the intent to deceive. This third element comes not from the statutory text but from the common law.

How can our text-centered approach to statutory interpretation generate such an outcome? I write separately to address this question,

which implicates the interrelated roles of *stare decisis*, the common law, and statutes. I also write to discuss what today's decision does *not* mean—specifically, it does not mean that courts may freely draw from the common-law well to "supplement" statutory requirements.

## I

### A

Petitioner asks us to declare that the intent-to-deceive element is no longer good law. According to petitioner, the common-law rule is inconsistent with § 705.051 of the Insurance Code; the two cannot coexist; and the statute must therefore take precedence. Yet the two *have* coexisted—for over a century. The statute was enacted in 1909. *See ante* at 2. If there is fatal inconsistency today, there was fatal inconsistency then and at every point in between. Neither the statute nor the common law (which, importantly, predated the statute) has changed in any material way. If we were writing on a blank slate—if, for example, § 705.051 were enacted for the first time *today*—we would have to resolve as a matter of first impression whether the statute's enumeration of two discrete requirements to defeat recovery would exclude an unenumerated intent-to-deceive element. But that ship sailed long ago. As the Court's scholarly examination reflects, this Court's cases have jointly applied the statutory and common-law requirements from the start. Whether those requirements can coexist is not an open question. As a matter of law, they *can*, because that legal question was settled long ago.

This conclusion does not require me to believe (or disbelieve) that it was *correct* to maintain the common-law intent-to-deceive element

upon the enactment of the statute. Even *conclusively* establishing the wrongness of that choice would be, in and of itself, insufficient to overcome *stare decisis*.[1] "After all, [that] doctrine exists to protect wrongly decided cases." *Mitschke v. Borromeo*, 645 S.W.3d 251, 260 (Tex. 2022). How could it be otherwise? *Stare decisis* would protect a null set if it protects only precedents with which we already agree. To overcome precedent, we need more than asserted (or even proven) error. *See id.* at 263–66. Our traditional guideposts that direct our path when considering overruling an erroneous precedent—efficiency, fairness, and legitimacy—do not point toward a change in this context.

"Efficiency" does not support tearing down a longstanding precedent that is clear and easily administrable. *See id.* at 263–64. Insurers may find it challenging to *prove* intent, of course. But the question is whether the substantive *requirement* of proving intent to defeat recovery is clear, and it is.

Nor is there any "fairness" ground for changing course now. Instead, "[o]ur reluctance [to unsettle precedent] is particularly acute in property and contract cases," like this one, because citizens are especially entitled to rely on the stability of legal rules in such private-law areas. *Id.* at 264. To the extent that a precedent involves statutory construction (including interpreting a statute in a way that has allowed this coexistence), *stare decisis* is at its peak. *Id.* at 265. "Even there," however, "circumstances may require the correction of seriously mistaken

---

[1] As I describe in Part II, *infra*, I conclude that the courts were likely correct to have maintained the intent-to-deceive element. But my vote in this case would be the same even if I reached the opposite conclusion.

and harmful precedents." *Id.*; *see id.* at 265 n.24 (noting cases in which this Court and the U.S. Supreme Court overruled statutory-interpretation precedents). But I see no plausible argument that the coexistence of the statutory and common-law elements was especially wrong *or* harmful, much less both.

This last point dovetails with "legitimacy," the final *stare decisis* guidepost. Legitimacy requires adhering to precedents for the sake of stability and reliability, even if they were conceived in error, but "adhering to or entrenching a precedent that is egregiously wrong or that has lost its underpinnings does not foster legitimacy." *Id.* at 266. If subsequent law has shaken (or destroyed) a precedent's foundations, then the precedent may stand like a hollowed tree—ready to fall for lack of vitality. That was the reason *stare decisis* did not impede overruling the precedent at issue in *Mitschke* itself. *Id.* It is mistaken to think of *stare decisis* as interested *only* in preserving a precedent at all costs; the doctrine's role is to help us determine, in a principled and neutral way, *what* to preserve. But legitimacy interests do not support changing the status quo here. The fact that the common law and the statute have dwelled together in comparative quietude for so long supports the notion that it was not egregious (*even if* it was wrong) to allow such coexistence.

Taken together, these points confirm that there is nothing extraordinary about this corner of the law that warrants repudiating longstanding precedent and practice. Accordingly, as I see it, the *most* we could muster is a sense that, had we been the ones to make the decision in the first instance, we may have decided things differently. That cannot be enough. If retrospective doubts about statutory

4

decisions justify overturning long-settled legal principles, there *would be* no long-settled legal principles. "Every day would be a new day in the life of the law; every case would present an opportunity to refashion settled principles and a temptation both for parties and courts to disregard disliked precedents." *Id.* at 258.

Petitioner's argument, however, largely depends on revisiting decisions already made. Petitioner invokes principles—like our plain-text approach to statutory interpretation—with which I agree and that would require careful consideration *if* we were confronting a truly open question. In my view, however, *stare decisis* applies and has not been overcome. That is enough to resolve the case even if the statute would otherwise not bear the reading that the Court gives it.

**B**

This conclusion would be true regardless of whether the intent-to-deceive element, which originated in the common law, remains part of the common law or if, like the inosculation of two trees, it has merged into the statute by judicial interpretation and legislative consent.

Suppose that the intent-to-deceive requirement is still nothing but a freestanding common-law doctrine. If so, we *could* abrogate it using our own authority. All common-law courts can do that. *See, e.g.*, *Price v. Price*, 732 S.W.2d 316, 319 (Tex. 1987) (abolishing the common-law doctrine of interspousal tort immunity); *Rogers v. Tennessee*, 532 U.S. 451, 453–55 (2001) (describing the consequences of the Tennessee Supreme Court's abolition of the old common-law "year and a day rule," under which a defendant could not be convicted of murder if the victim survived longer than that period of time).

The question is not of authority but of propriety. *Stare decisis* would counsel against doing so here, at least based on the arguments we have before us. For one thing, petitioner has not asked us to simply abrogate the common-law rule by exercising our common-law authority. Instead, petitioner argues that the statute *itself* requires this result. But this contention, too, implicates *stare decisis*. The relevant precedent has at least *two* components: (1) the substantive principle (the part that compels insurers to establish the insured's intent to deceive) and (2) a jurisprudential principle (under which the common law's scienter element permissibly stands alongside the statute's requirements).

As *Mitschke* illustrates, even when *stare decisis* applies, its default presumption of retaining a challenged precedent can be rebutted. That is true in contexts like this one, where the common law is challenged on the ground of its incompatibility with a statute. Indeed, that is a very powerful ground because of the primacy of statutory law. Under our constitutional system, in which the People govern themselves, statutes enacted by elected political representatives are the chief vehicle for the People to exert their authority. This Court can and should overrule a common-law precedent when developments external to the judicial system undermine the precedent's vitality, as we did, for example, in *Texas Mutual Insurance Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012).

In *Ruttiger*, we recognized that intervening statutory law provided a basis to doubt the viability of the cause of action that this Court had created in *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex. 1988). *See Ruttiger*, 381 S.W.3d at 447. Significantly, *Aranda* was followed by massive statutory revisions indicating legislative

6

intent to achieve a comprehensive and exclusive method to resolve the kind of claims that *Aranda* addressed. *Id.* at 441–44, 449–50. The new statutory regime and the Court-created tort coexisted uneasily for a time. In *Ruttiger*, we did not hold that the legislature had directly eliminated the common-law action; rather, we concluded that the legislation so thoroughly demolished the *basis* for our precedent that *we* should take the step of overruling *Aranda*. *Id.* at 451. The decision was ours and not compelled by the legislature. *Id.* at 450. But as *Ruttiger* illustrates, the proper way for us to make such a decision is to account for the separation of powers and the preeminence of statutory over common law.

This case is markedly different. Unlike in *Ruttiger*, no legislative action has either expressly or functionally changed the status quo once the courts made clear that the statutory and common-law requirements would coexist. Unlike the highly reticulated statutory program that (at best) fit awkwardly with the existence of the *Aranda* cause of action, the intent-to-deceive requirement became no less compatible with the Insurance Code. And whereas the short-term coexistence of *Aranda* and the new statute was always fraught, the coexistence of the statutory and common-law requirements at issue here has been lengthy and peaceful.

I agree with the Court that the intent-to-deceive element is not fatally inconsistent with the statute. But, again, I believe that we could reach this result without accepting petitioner's invitation to relitigate it "de novo." *Cf. ante* at 11. Our standard application of *stare decisis* presents a barrier that *could* be overcome upon showing something new and material in statutory or other law or, even without that, on identifying some exceptional irregularity in our precedent. But unlike

7

in *Ruttiger*, no new developments have been added to the equation, and there is nothing extraordinary about the precedent itself. There is no real work for us to do here.

## C

But there is more. Not only has nothing new happened that would make this case like *Ruttiger* (or otherwise demonstrate the need for the common-law rule to recede), but the contrary is true. The legislature has not merely failed to do anything that would *change* the status quo, but has taken no such action *despite* repeatedly revisiting, revising, and recodifying the Insurance Code.

As the Court rightly notes, we presume that the legislature "acts with full knowledge of . . . extant law." *Ante* at 9 n.14. Thus, in the legislature's recurring visits to the Insurance Code, it has brought along the knowledge that leaving § 705.051 intact amounted to leaving the common-law requirement intact, too. Hence the significance of the Court's observation that, "[i]n over a hundred years, there has been no indication that the Legislature disagrees with the common-law approach to enforcement of insurance contracts." *Ante* at 21.

This statutory history suggests that the common-law requirement has never been foreign to the statute's operation. Indeed, because of the presumption of the retention of the common law, it would not have been unreasonable (as I describe below, *see infra* Part II) for early twentieth-century courts to have regarded the legislature's enactment as *embracing* the intent-to-deceive requirement from the start. One way or another, one could conclude that the common-law requirement began as, or for all practical purposes became, part of the larger statutory scheme.

8

If so, the *stare decisis* analysis would be even stronger, because adherence to a stable understanding of *statutory* precedents is especially important. *Mitschke*, 645 S.W.3d at 265. The more tightly linked a common-law principle is to the statute itself, the more cautious we should be about disturbing it. One important reason even to have a concept of legislative ratification or acceptance (whether formally applicable here or not) is that uprooting law that is intertwined with statutory enactments risks undermining the statutes. At the very least, destabilizing preexisting common law of which the legislature was aware should be done, if at all, with great care and for only compelling reasons.

Said differently: If preexisting common law has become closely linked with the administration of a statutory program, and if the legislature has revisited the *general* statutory terrain but done nothing to change the *specific* part of the law at issue, further changes should normally come from the legislature and not from the courts. The legislature at any time could have, and at any time still may, abrogate the intent-to-deceive element, either expressly or by necessary implication. The affected public, relevant industries, bar organizations, and other interested parties are always free to present their arguments to the legislature whenever that body meets. If the legislature becomes persuaded to change course, it need only say so, and the courts will apply the new law as cheerfully as they applied the old.

## II

The foregoing analysis can assume, at least for argument's sake, that Texas courts have been *wrong* all these years to retain the intent-to-deceive requirement despite § 705.051's silence regarding scienter.

9

At the very least, petitioner's textual arguments are far from trivial.

I conclude, however, that the Court's reading is correct—not just, or even primarily, because the statute uses the word "unless." It would be too much, and too judicially self-aggrandizing, to assert that any time the legislature uses that conjunction, it leaves a gaping hole for the courts to fill at will. Even if the statutory requirements are linguistically a "floor" rather than a "ceiling," that hardly means that the courts are empowered to drag furniture onto the floor whenever the spirit moves them. I do not understand the Court to say any such thing, of course; instead, I join the opinion for its correct and properly modest holding that the statute's choice of language fails to expressly *foreclose* the preexisting common-law requirements.

This holding is correct because new legislation, merely by its passage, neither supplants existing common-law doctrines nor repeals existing statutory provisions. To the contrary, either sort of law that antedates a new enactment can serve as a useful reference point for determining what that later law means.[2] Historically, the common law is especially valuable. "[W]e construe statutory language against the

---

[2] *See, e.g.*, *Brown v. City of Houston*, 660 S.W.3d 749, 755 (Tex. 2023) ("Statutory history concerns *how the law changed*, which can help clarify *what the law means*."); *Gilbert v. United States*, 370 U.S. 650, 655 (1962) ("For in the absence of anything to the contrary it is fair to assume that Congress used that word [forgery] in the statute in its common-law sense."); *In re Soza*, 542 F.3d 1060, 1071 (5th Cir. 2008) (Wiener, J., concurring) ("I can only justify providing content to the Insurance Code's fraud provision by giving 'fraud' its *common law* meaning, not by torturing other incompatible statutes."); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.").

backdrop of common law, assuming the Legislature is familiar with common-law traditions and principles." *Marino v. Lenoir*, 526 S.W.3d 403, 409 (Tex. 2017). "Congress is understood to legislate against a background of common-law . . . principles, and when a statute covers an issue previously governed by the common law, we interpret the statute with the presumption that Congress intended to retain the substance of the common law." *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010) (internal quotations omitted). This principle applies to all positive law—not just statutes, but constitutional texts, too.[3] And given this State's rich common-law history, *see, e.g., JDH Pac., Inc. v. Precision-Hayes Int'l, Inc.*, 659 S.W.3d 449, 450–51 (Tex. 2022) (Young, J., concurring), law is seldom written on a blank slate.

The statute and the common law that existed at the time of the statute's enactment thus cannot be read as separate, independent rules of decision. As we observed last year in *Taylor v. Tolbert*, "we follow an 'opt-out' approach that incorporates common-law principles absent the Legislature's clear repudiation." 644 S.W.3d 637, 650 (Tex. 2022). We

---

[3] *See, e.g., D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 471 n.9 (1942) (Jackson, J., concurring) ("Particularly in the clauses dealing with the rights of the individual, the Constitution uses words and phrases borrowed from the common law, meaningless without that background, and obviously meant to carry their common-law implications."); Stephen Sachs, *Constitutional Backdrops*, 80 Geo. Wash. L. Rev. 1813, 1822 (2012) ("Our founding document is firmly rooted in the common-law tradition, in which each new enactment is layered on top of an existing and enormously complex body of written and unwritten law."); William Baude, *Sovereign Immunity and the Constitutional Text*, 103 Va. L. Rev. 1, 9–22 (2017) (arguing that state sovereign immunity is a "constitutional backdrop"—that is, a background rule of common law that the Constitution insulates from change).

must, therefore, essentially read the statute with a common-law gloss.[4] It is only based on this understanding that I can make the assertions that I made about *stare decisis* in Part I, *supra*, and that the Court can rightly say that *stare decisis* "has its 'greatest force' in areas where the Legislature may rightfully flex its constitutional power, like enactment of the Insurance Code provisions at issue here." *Ante* at 21 (quoting *Mitschke*, 645 S.W.3d at 265).

The law of defenses to statutory actions—especially but not exclusively in criminal prosecutions—is comfortable with statutory silence. In *Staples v. United States*, the Supreme Court observed that a federal statute

> is silent concerning the *mens rea* required for a violation. . . . Nevertheless, silence on this point by itself does not necessarily suggest that Congress intended to dispense with a conventional *mens rea* element . . . . On the contrary, we must construe the statute in light of the background rules of the common law, in which the requirement of some *mens rea* for a crime is firmly embedded.

511 U.S. 600, 605 (1994) (internal citation omitted). And as *Taylor* put it in a civil context, "[w]hen the Legislature makes [new] law, it does so against a backdrop in which common-law defenses abound, and those

---

[4] This concept is abstract but important, full of real-world implications. One particularly prominent (and controversial) one is the defense of qualified immunity in suits brought under 42 U.S.C. § 1983. I take no position on the recent scholarly debates about that defense, but the conventional belief is that in passing the Civil Rights Act of 1871 and providing individuals a cause of action for violations of their constitutional rights, the Reconstruction Congress did not abrogate—and thus incorporated into the law—the applicable and preexisting common-law immunities that state officials could originally claim in analogous tort suits. *See, e.g.*, *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

defenses are generally available unless the Legislature clearly indicates otherwise." *Taylor*, 644 S.W.3d at 650. The observation that lawmaking bodies act in light of the common law's well-established background norms, often regarding defenses, is not novel. As Judge Easterbrook put it, defenses like "justification," which have been around for "thousands of years," operate as background assumptions baked into the law, much like "grammar and diction." Frank H. Easterbrook, *The Case of the Speluncean Explorers: Revisited*, 112 Harv. L. Rev. 1913, 1913–14 (1999).

Here, the common law's scienter requirement—which amounts to a defense by the insured if an insurer seeks to invalidate the policy—was clear when the legislature acted. The legislature easily could have but did not exclude that requirement. We must assume that legislative choice to have been purposeful; it was at least consequential. Much as in the cases cited above, its result was to retain the common law. I thus agree with the Court that petitioner's plain-text arguments are unavailing, because petitioner would need text that *excludes* the intent-to-deceive element; silence is petitioner's enemy, not its friend. This result remains true even though the legislature expressly codified *some* parts of the common law while leaving the intent element unwritten. That pattern is not particularly rare; the statutes that draw from criminal and civil common-law actions, yet are silent about intent, all mimic it. Nor does the retention of the intent-to-deceive requirement render the codified portions of the law superfluous. The very act of codification ensures that *no matter what* this Court were to do with the common law, the requirements' presence in a statute book would prevent further judicial modification; they would endure in the form that the

13

legislature adopted.[5] Thus, the legislature either left it to the courts to determine the compatibility of the intent-to-deceive element *or* it assumed the continuation of the existing standard without need of codification. That is just an academic question now, since the courts reaffirmed that the intent-to-deceive requirement would remain and the legislature has never said otherwise. *Stare decisis* takes over at this point.

In saying all this, however, I distinguish between, on the one hand, the intent-to-deceive requirement that the legislature knew was *already* part of the common law (much as a car owner's knowledge that a key is also required to operate a car, *see ante* at 14) and, on the other, some hypothetical wholly different and unexpected requirement. The courts may not simply add whatever additional requirements they desire based either on statutory silence about such a requirement or on the use of "unless" in the statute's text. Notably, this Court has *not* purported to add new requirements—we have simply adhered to the common-law principles that the legislature knew to already exist.

Equally important—and far more so today than in 1909—we should be wary of new common-law innovations altogether, whether framed as a "gloss" on a statute or a new cause of action. As I have previously observed, "it is increasingly less likely than ever before that there are [statutory or regulatory] gaps that judges alone can (much less should) fill." *Elephant Ins. Co. v. Kenyon*, 644 S.W.3d 137, 157 (Tex. 2022) (Young, J., concurring). By the same token, we must also be

---

[5] For similar reasons, I agree with the Court's detailed explanation for why § 705.104's intent requirement does not become superfluous unless we adopt petitioner's construction of § 705.051. *See ante* 18–19.

mindful of the truism that we may not "rewrite the statute under the guise of interpreting it." *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014). But today's decision involves no innovation of any sort, much less any improper judicial adventurism. The Court merely leaves intact principles that have been part of Texas law for the bulk of Texas history.

Indeed, for all the reasons I have described, I am persuaded that any judicial impropriety would come not in retaining but in abandoning the intent-to-deceive requirement. I say that not because of any policy preference (I have none), but because dispensing with the scienter element would unjustifiably destabilize settled law. Doing so would not reflect judicial humility or deference to a statute, as it might seem at first glance; it instead would be an aggressive flexing of judicial muscle.

\* \* \*

At this point, the scienter element must be regarded as within the legislature's exclusive authority. That body, not this one, should hear any arguments concerning the wisdom of requiring proof of intent to deceive or complaints about Texas law not being in accord with the law of other states. If and when the legislature determines that the intent-to-deceive requirement has outlasted its usefulness, it can say so. Or it could take other steps that, by necessary implication, may justify this Court's reconsideration of that requirement, comparable to the Court's analysis in *Ruttiger*. Either way, to avoid the common-law intent-to-deceive element that has become part and parcel of the statutory scheme, petitioner must have something *from the legislature* (and something material—not a mere stylistic change in the statutory language). Nothing less can surmount the formidable *stare decisis* obstacle of

15

"unsettling that which has been settled so long and with such clarity." *Ante* at 21.

I therefore gladly join the Court's opinion affirming the judgment below.

 

Evan A. Young
Justice

**OPINION FILED:** April 28, 2023